**John POTTLE, Plaintiff—Appellant,**

v.

**Michael J. ASTRUE, Commissioner of the Social Security Administration,\* Defendant—Appellee.**

**No. 05–36041.**

United States Court of Appeals, Ninth Circuit.

Submitted Dec. 5, 2007.\*\*

Filed Jan. 18, 2008.

---

\* Michael J. Astrue is substituted for his predecessor Jo Anne Barnhart as Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

\*\* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed.R.Civ.P. 34(a)(2).

Kimberly K. Tucker, Esq., Alan Stuart Graf PC, Amy K. Van Horn, Esq., Portland, OR, Alan Stuart Graf, Esq., Summertown, TN, for Plaintiff–Appellant.

Neil J. Evans, Esq., USPO—Office of the U.S. Attorney Mark O. Hatfield U.S. Courthouse, Lucille G. Meis, Esq., Portland, OR, Johanna Vanderlee, SSA—Social Security Administration Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: O'SCANNLAIN, GRABER, and CALLAHAN, Circuit Judges.

MEMORANDUM ***

John Pottle appeals the district court's order affirming the Commissioner of Social Security's final decision, which denied Pottle's application for supplementary social security income and disability benefits under Title XVI of the Social Security Act. 42 U.S.C. §§ 401–33, 1381–83f. Because the parties are familiar with the facts of this case, we recount them here only as necessary.

On January 12, 2004, an Administrative Law Judge ("ALJ") determined at

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

step five of the five-step evaluation process that Pottle was not disabled. 20 C.F.R. § 416.920. That decision became the final decision of the Commissioner. We conclude that the ALJ's decision was supported by substantial evidence. 42 U.S.C. § 405(g); *Connett v. Barnhart*, 340 F.3d 871, 873 (9th Cir.2003).

■ Two examining physicians presented conflicting opinions regarding Pottle's capacity for work. The ALJ gave substantial weight to the opinion of Dr. Robinann Cogburn, Ph.D., who concluded that Pottle's psychological impairments would not prevent him from functioning in an employment setting, and gave little weight to the opinion of Dr. James Bryan, Ph.D., who concluded that long-term employment was not feasible for Pottle. The ALJ provided "specific and legitimate" reasons for resolving the conflict in this manner. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir.1995) ("[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." (citation omitted)). The ALJ determined that Dr. Bryan's opinion was based primarily on his diagnosis of Pottle as suffering from mixed personality disorder and that such diagnosis was not supported by the treatment record. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir.1989) ("The ALJ is responsible for determining credibility and resolving conflicts in medical testimony."). First, the ALJ noted that no other physician, including Pottle's treating psychiatrist, established such a diagnosis. Second, the ALJ explained that the objective examinations conducted on Pottle, a Minnesota Multiphasic Personality Inventory 2 test and a Personality Assessment Inventory, yielded invalid results because of Pottle's over-reporting of his symptoms. Finally, the ALJ found that

Dr. Bryan's own notes indicated that Pottle exaggerated his symptoms during Dr. Bryan's examination. *See Connett*, 340 F.3d at 875 (holding that the ALJ properly rejected a treating physician's testimony in favor of an examining physician's statements because the treating physician's "extensive conclusions regarding [claimant's] limitations are not supported by his own treatment notes"). Although the embellishment of symptoms may be consistent with personality disorder, the lack of support for such a diagnosis elsewhere in the treatment record was a specific and legitimate reason for the ALJ to give Dr. Bryan's opinion little weight in favor of Dr. Cogburn's.

■ In addition, the ALJ did not err in failing to discuss a portion of the testimony offered by therapist Chris Hill, who suggested that Pottle's psychological limitations would eventually cause him to experience difficulties in the workplace. An ALJ is not required to provide reasons for failing to discuss the speculation of a lay witness. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001) ("Lay testimony as to a claimant's *symptoms* is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." (emphasis added)).

■ Finally, the ALJ did not err in finding that Pottle did not meet or equal the listing criteria for Listing 12.05C. 20 C.F.R Part 404, Subpart P, Appendix 1, § 12.05C. As the ALJ noted, no physician ever found that Pottle met the criteria for Listing 12.05C and Pottle did not offer any evidence suggestive of mental retardation before he reached the age of 22. Pottle's arguments that he also meets or equals the criteria for Listing 12.07 and 12.08 are waived because he failed to raise them in

the district court. *Allen v. Ornoski*, 435 F.3d 946, 960 (9th Cir.2006).

Accordingly, the district court's decision affirming the Commissioner's denial of Pottle's application is

**AFFIRMED.**

GRABER, Circuit Judge, dissenting:

Although I agree that the administrative law judge ("ALJ") did not err in finding that Pottle failed to meet or equal the criteria for Listing 12.05C and did not err in failing to discuss part of Hill's testimony, I respectfully dissent from the remainder of the disposition.

In my view, the ALJ did not give any "legitimate" reasons, *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir.1996), for discounting the opinion of Dr. Bryan. The second and third reasons cited by the disposition, maj. dispo. at ——— —Pottle's exaggeration of his symptoms and the resulting invalidity of formal personality tests—not only fail to support the ALJ's conclusion, they in fact buttress Dr. Bryan's diagnosis of a personality disorder.

Dr. Bryan's report states in no uncertain terms that he was fully aware both that Pottle over-reported his symptoms and that the personality tests were invalid for that reason. Dr. Bryan's diagnosis of a personality disorder rested on *different* reasons—the validity of which neither the ALJ nor the disposition challenges. If a doctor runs a multitude of tests, one of which produces invalid results, that doctor still can make a valid diagnosis on the basis of the other, valid test results. The fact that one of the tests produced invalid results—as recognized by the doctor himself—does not in any way render the diagnosis invalid.

In addition, and of particular relevance here—as the disposition recognized, maj. dispo. at ——— —the embellishment of

symptoms itself is a symptom of a personality disorder. Far from detracting from Dr. Bryan's diagnosis, then, Pottle's over-reporting of his symptoms actually *supports* Dr. Bryan's diagnosis of a personality disorder. Put another way, if exaggeration of symptoms is a classic marker of a personality disorder, then exaggeration of symptoms, which is known to the diagnostician, cannot at the same time undermine the diagnosis.

The other reason cited by the disposition—the fact that "no other physician, including Pottle's treating psychiatrist, established such a diagnosis [of a personality disorder]," maj. dispo. at ——— —is not a legitimate reason to disbelieve the diagnosis. An ALJ must provide "specific and legitimate reasons" for rejecting an examining doctor's opinion *"even if contradicted by another doctor."* *Lester*, 81 F.3d at 830–31 (emphasis added). The contradiction itself cannot serve as a reason; otherwise the *Lester* test would be hollow.

Even setting aside that legal error, it is important to examine exactly what Pottle's treating psychiatrist did state. It is true that she did not "establish" a diagnosis of a personality disorder. But she noted in the diagnosis section of her report that she *suspected* a personality disorder diagnosis but declined to make the diagnosis at that time *only because further observation or testing was required* before she could *conclusively establish* the diagnosis. Other doctors made the same observations in their reports. As a general matter, if Drs. A, B, and C state that they suspect a particular diagnosis but that further testing is required, and Dr. D determines, after such further testing, that the diagnosis is in fact proper, there simply is no contradiction between the suspected diagnosis by Drs. A, B, and C, and the confirmation of that suspicion by Dr. D. In this case, with the sole exception of Dr. Bryan,

all of the doctors in the record based their conclusions only on their own observations and testing and did not have the benefit of any psychiatric reports from other doctors. Dr. Bryan, by contrast, based his conclusion on an extra *twenty months* of observations and had the benefit of psychiatric reports by *four* other doctors. Only Dr. Bryan had an opportunity both to examine Pottle *and* consider his extensive medical records in order to detect a pattern. He was the *only* doctor who looked at other psychologists' reports and thus was the *only* doctor who was in a position to make a definitive diagnosis that requires the existence of a pattern of behavior.

Accordingly, I would reverse and remand. Under our case law, and as a matter of plain logic, the ALJ's decision with respect to Pottle's disability was not supported by substantial evidence.